T.C. Memo. 2020-48

UNITED STATES TAX COURT

HENRY C. WILLIAMS AND SONJA L. JOHNSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 22528-14, 8947-15,      Filed April 16, 2020.
23676-16.

<u>Joseph M. Bray</u>, <u>Sandeep Singh</u>, and <u>Clifford A. Capdevielle</u>, for petitioners.

<u>Jeffery D. Rice</u> and <u>Janice B. Geier</u>, for respondent.

**[\*2]**    MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  In these consolidated cases respondent determined deficiencies in petitioners' Federal income tax and section 6662(a)[1] accuracy-related penalties as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2010 | $62,050 | $12,410 |
| 2011 | 29,583 | --- |
| 2013 | 142,004 | 28,401 |
| 2014 | 166,778 | 33,356 |

---

[1]  All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]  After concessions,[2] the issues for decision are whether petitioners:

(1) failed to report $5,936 of short-term capital gain income for 2014, (2) are

entitled to deductions claimed on Schedules C, Profit or Loss From Business, for

the years at issue, and (3) are liable for the 10% additional tax on early

distributions from qualified retirement plans for 2010 and 2011.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  We incorporate

the first stipulation of facts, first supplemental stipulation of facts, and

---

[2]  These cases were tried in San Francisco, California.  A substantial amount of trial time pertained to respondent's disallowance of petitioners' rental real estate losses for the years at issue.  Respondent has since conceded that petitioners are entitled to deduct $47,944, $49,994, $66,411, and $74,270 as nonpassive losses for 2010, 2011, 2013, and 2014, respectively.  Respondent's concession for 2010 is $50 less than the amount disallowed in the deficiency notice.  Because this discrepancy is not addressed in respondent's simultaneous opening brief, we conclude this is an error and that respondent concedes $47,994 for 2010.

Respondent also concedes on brief that petitioners:  (i) did not have unreported capital gain income for 2013, (ii) did not fail to report short-term capital gain income of $63,566, (iii) did not fail to report $131 of taxable qualified dividends for 2010 and $10 of taxable interest from the State of California for 2011, and (iv) are not liable for sec. 6662(a) accuracy-related penalties for 2010, 2013, and 2014.  Petitioners concede that they received taxable retirement income of $71,625 and $42,858 in 2010 and 2011, respectively.

For some of the issues that remain in dispute, the parties have made partial concessions, which we address in the body of this opinion.  Other adjustments are computational and will be resolved under Rule 155.

[*4] accompanying exhibits by this reference.  Petitioners resided in California when they timely filed their petitions.

Petitioner Husband's Background

Petitioner husband started working for Washington Mutual Insurance Co. (Washington Mutual) in 2003.  As regional manager he oversaw the sales of insurance and commercial banking products.  In 2008 Washington Mutual merged into J.P. Morgan Chase Bank (J.P. Morgan), which retained petitioner husband as part of a transition team to integrate the two businesses.  J.P. Morgan relieved petitioner husband of his responsibilities in January 2010.  Although his official termination date was June 2010, petitioner husband did not perform services for J.P. Morgan after January 2010.

GSE Financial

In 2007 petitioner husband formed GSE Financial (GSE) as a sole proprietorship.  Petitioner husband intended for GSE to operate as a holding company for insurance businesses he hoped to acquire.  In 2010 petitioner husband's sole focus with respect to GSE was expansion.  Petitioner husband spent his GSE-related time pursuing deals with several potential targets.  In late December 2010 petitioner husband purchased an interest in one of those targets, insurance brokerage firm Bernall & Jones.  Thereafter, beginning in January 2011,

**[\*5]** GSE provided business development, marketing, and other support to the newly acquired firm.

In 2010, 2011, and 2013 GSE engaged law firms Donahue, Gallagher & Woods and Michelman & Robinson. These firms provided legal advice and counsel pertaining to licensing, State insurance requirements, acquisitions, and business planning.

GSE leased office space in Oakland, California, during the years at issue. During 2014 petitioner husband paid $677 for that office space.

In 2013 petitioner husband paid $4,465 for GSE-related taxes and licensing fees, postage, bank charges, printing, telephone, and internet. Petitioner husband also paid $390 for supplies used in connection with his GSE-related activities. In 2014 petitioner husband paid $289 for GSE-related online marketing efforts.

Petitioners reported GSE's expenses on Schedules C for 2010 and 2011. For 2013 and 2014 they reported GSE's expenses on Schedules C2. GSE's reported expenses are summarized below:

[*6]

| Expense | 2010 | 2011 | 2013 | 2014 |
|---|---|---|---|---|
| Meals and entertainment | $1,531 | $1,161 | $563 | $346 |
| Rent/lease--Other business property | 4,140 | 7,500 | 533 | --- |
| Depreciation | 1,600 | --- | 33,875 | --- |
| Other | 1,707 | 5,262 | 4,945 | --- |
| Car and truck | 3,600 | 5,327 | 5,506 | --- |
| Legal and professional | 12,204 | 1,000 | 850 | --- |
| Travel | 14,785 | 8,489 | 3,465 | 401 |
| Supplies | --- | --- | 390 | --- |
| Interest | --- | --- | 4,532 | --- |
| Office | --- | --- | --- | 677 |
| Advertising | --- | --- | --- | 289 |

In the notices of deficiency respondent disallowed some of the above-listed deductions for 2011 and all of the deductions for 2010, 2013, and 2014. We set forth infra p. 24 the specific deductions (or portions thereof) that respondent disallowed for 2011.

BJW Insurance LLC

Founded by Rob Jones and Chris Bernall in 1992, Bernall & Jones was a surplus line commercial insurance brokerage firm that provided commercial property liability, general liability, errors and omissions, and other commercial lines of insurance. Petitioner husband was interested in acquiring the firm because

[*7] it had an established staff capable of handling its daily operation. Bernall & Jones' staff had extensive knowledge of the customer base, the accounts, and other aspects of the business.

Petitioner husband paid $320,000 for an ownership interest in Bernall & Jones in late December 2010. After the sale Bernall & Jones was renamed BJW Insurance LLC (BJW). Mr. Jones and Mr. Bernall remained partners in the firm during the 2011 tax year. In 2012 petitioner husband became the sole owner of BJW, which continued to operate as a single-member limited liability company.

During 2013 and 2014 BJW employed as its office manager Kendra Thompson, who assisted existing customers and handled office duties including sales, billing, accounting, and all portfolio work for the company. In 2013 BJW also employed Gregory Wessel, who assisted customers and solicited sales. The following year BJW employed Michael Johnson, who assisted Ms. Thompson with customer relations, marketing, and various administrative duties. During 2014 petitioner husband paid wages of $58,000 and $7,209 to Kendra Thompson and Michael Johnson, respectively.

During 2013 petitioner husband (on behalf of BJW) paid $12,723 for individual sales licenses, California and other local taxes, and entity licensing fees. During 2014 petitioner husband (on behalf of BJW) paid legal and professional

[*8] fees of $2,979. That year BJW lost several accounts, forcing petitioner husband to take out several short-term, high-interest loans to keep the company afloat. As a result, petitioner husband (on behalf of BJW) paid interest of $28,181.

For 2011 BJW filed a partnership return, and petitioners reported a nonpassive loss from BJW on a Schedule E, Supplemental Income and Loss, for that year. Petitioners reported BJW's income and expenses on Schedules C1 for tax years 2013 and 2014.[3] BJW's reported Schedule C1 expenses are summarized below:

---

[3] With respect to these tax years, respondent does not dispute that BJW was a disregarded entity under secs. 301.7701-2(c)(2)(i) and 301.7701-3(b)(1)(ii), Proced. & Admin. Regs. The income and expenses of a disregarded entity are usually reflected on a Schedule C.

[*9]

| Expense | 2013 | 2014 |
|---|---|---|
| Other | $7,020 | --- |
| Wages | 55,984 | $68,686 |
| Meals and entertainment | 270 | 2,489 |
| Travel | 1,410 | 2,456 |
| Taxes and licenses | 12,723 | 15,317 |
| Rent/lease | 20,097 | 21,135 |
| Legal and professional | 2,234 | 2,979 |
| Interest | 3,109 | 28,181 |
| Insurance | 10,634 | 17,070 |
| Commissions and fees | 112,432 | 125,952 |
| Utilities | --- | 5,239 |
| Office | --- | 3,060 |
| Depreciation | --- | 36,179 |
| Car and truck | --- | 756 |
| Repairs and maintenance | --- | 71 |
| Advertising | --- | 435 |

Respondent disallowed all of the above-listed deductions in the notice of deficiency for 2013 and 2014.

Withdrawals From Retirement Accounts

In 2010 and 2011 petitioners withdrew $71,625 and $42,858, respectively, from their retirement accounts. On their 2010 return petitioners reported that they

**[*10]** received $50,275 in pension and annuity distributions but asserted the distributions were nontaxable because they were "used to fund their children's qualified higher education expenses". Petitioners reported $49,259 in pension and annuity distributions on their 2011 return but treated the distributions as nontaxable for the same reason as for 2010.

Respondent determined that petitioners had taxable retirement income of $71,625 and $42,858 for 2010 and 2011, respectively. For 2010 respondent determined an additional tax of $7,162 under section 72(t). Respondent determined a section 72(t) additional tax of $1,702 for 2011 after subtracting amounts petitioners used for higher education expenses. Petitioners concede that their retirement distributions were taxable but contest their liability for the additional tax under section 72(t).

Stock Options

During 2013 and 2014 petitioner wife was an employee of TW Telecom Holdings (TW Telecom). Her compensation included salary, commission income, and stock options that she exercised in 2013 and 2014.

TW Telecom provided petitioner wife Forms W-2, Wage and Tax Statement, reporting wages of $236,970 and $353,365 for 2013 and 2014, respectively. For 2014 her Form W-2 wages comprised, among other forms of

[*11] compensation, $63,566 for the exercise of the stock options that year.

Petitioners reported petitioner wife's Form W-2 income on their 2014 income tax

return. Petitioner wife received $69,502 in gross proceeds from the sale of

securities in 2014. E Trade Clearing LLC (E Trade) issued several Forms 1099-B,

Proceeds From Broker and Barter Exchange Transactions, for 2014 reporting that

petitioner wife received those gross proceeds and stating that she had a basis of

zero in the securities sold. In the notice of deficiency for 2014, respondent relied

on the Forms 1099-B to determine that petitioners had unreported short-term

capital gain income of $69,502.[4] As discussed below, respondent now alleges that

petitioners failed to report only $5,936 of that amount.

OPINION

I.  Short-Term Capital Gain Adjustment

We first address whether petitioners had, as respondent now alleges,

unreported short-term capital gain income of $5,936 for 2014. As a general rule,

the Commissioner's determination of a taxpayer's liability in a notice of

deficiency is presumed correct, and the taxpayer bears the burden of proving that

---

[4] Respondent also determined that petitioners had unreported short-term capital gain income of $25,833 on the basis of a 2013 Form 1099-B issued by E Trade. On brief respondent concedes this adjustment.

[*12] the determination is incorrect.[5]  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

In the Court of Appeals for the Ninth Circuit, to which an appeal of these cases presumably would lie absent a stipulation to the contrary, <u>see</u> sec. 7482(b)(1)(A), (2), the presumption of correctness does not attach in cases involving unreported income unless the Commissioner first establishes an evidentiary foundation linking the taxpayer to the alleged income-producing activity, <u>see</u> <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358, 361-362 (9th Cir. 1979), <u>rev'g</u> 67 T.C. 672 (1977).  The requisite evidentiary foundation is minimal and need not include direct evidence.  <u>See</u> <u>Rapp v. Commissioner</u>, 774 F.2d 932, 935 (9th Cir. 1985); <u>Banister v. Commissioner</u>, T.C. Memo. 2008-201, <u>aff'd</u>, 418 F. App'x 637 (9th Cir. 2011).

Respondent established the requisite evidentiary foundation linking petitioners to an income-producing activity.  Petitioners stipulated that petitioner

---

[5]  Sec. 7491(a) provides that if, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtit. A or B and meets other prerequisites, the Commissioner shall have the burden of proof with respect to that issue.  <u>See</u> <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440-441 (2001). Because we resolve these cases on the preponderance of the evidence and without regard to the burden of proof, we do not decide whether sec. 7491(a) applies here.

**[\*13]** wife received $69,502 in gross proceeds from the sale of securities in 2014. This amount matches the amount reported by E Trade on the Forms 1099-B.[6]

Petitioners contend that the proceeds reported on the Forms 1099-B were included in petitioner wife's reported Form W-2 income. Respondent now concedes this issue to the extent of $63,566. This concession leaves in dispute $5,936, which is the difference between the amount reported on the Forms 1099-B ($69,502) and the amount respondent conceded ($63,566).

Petitioners stipulated that petitioner wife received the $5,936, and the record does not show that this amount was reported on the return as an amount attributable to the exercise of petitioner wife's stock options.[7] The record,

_____

[6] Under sec. 6201(d), if a taxpayer asserts a reasonable dispute with respect to an item of income reported on an information return filed by a third party and the taxpayer meets certain other requirements, the Commissioner bears the burden of producing reasonable and probative evidence, in addition to the information return, concerning the deficiency attributable to the income item. Assuming arguendo that respondent bears the burden of production under sec. 6201(d), we find that respondent has satisfied it.

[7] We understand the parties to agree that the stock options at issue were nonqualified stock options. If a nonqualified stock option does not have a readily ascertainable fair market value at the time of the grant, the exercise of the option gives rise to gross income at the time of the exercise, equal to the amount by which the fair market value of the stock at the exercise date exceeds the option price. Sec. 83(a); Tanner v. Commissioner, 117 T.C. 237, 246 (2001), aff'd, 65 F. App'x 508 (5th Cir. 2003); Svoboda v. Commissioner, T.C. Memo. 2006-235, slip op. at 8; sec. 1.83-7(a), Income Tax Regs. The stock received upon the exercise of

(continued...)

**[\*14]** therefore, does not support our finding, and we decline to find, that the exercise of the stock options resulted in a basis sufficient to offset the disputed gross proceeds of the same amount. Nor does the record show that the $5,936 is not taxable for another reason. We therefore hold that petitioners have unreported short-term capital gain income of $5,936 for 2014.

## II. Deductions

Deductions are a matter of legislative grace, and taxpayers generally bear the burden of proving that they have met all requirements to be entitled to any deductions claimed. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers generally must maintain sufficient records to enable the Commissioner to determine their correct tax liability. Sec. 6001.

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Such expenses must be directly connected with or pertain to the taxpayer's trade or business. Sec. 1.162-1(a), Income Tax Regs. Generally, no

---

[7](...continued)
the option generally has an adjusted basis equal to the option price plus any amount includible in gross income as a result of the option exercise, and any gain or loss computed on the sale of that stock takes that basis into account. See Svoboda v. Commissioner, slip op. at 9.

[*15] deduction is allowed for personal, living, or family expenses, nor is a deduction proper for expenditures that are properly categorized as capital expenditures. See secs. 262 and 263. The determination of whether an expenditure satisfies the requirements of section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

When a taxpayer establishes that he incurred deductible expenses but is unable to substantiate the exact amounts, we can estimate the deductible amounts, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In estimating the amount allowable, we bear heavily against the taxpayer whose inexactitude is of his own making. See Cohan v. Commissioner, 39 F.2d at 544.

Section 274(d) imposes strict substantiation requirements for travel, entertainment, gift, and listed property (including passenger automobiles) expenses. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Under section 274(d), the taxpayer generally must substantiate either by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense; (2) the

[*16] time and place the expense was incurred; (3) the business purpose of the expense; and (4) in the case of an entertainment or gift expense, the business relationship to the taxpayer of each expense incurred. For listed property expenses, the taxpayer must establish the amount of business use and the amount of total use for the property. See sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement specifically detailing the required elements. Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

A.    GSE

For 2010 and 2011 respondent argues that petitioners' GSE-related expenditures are nondeductible startup expenses under section 195. Respondent also contends that petitioners failed to substantiate many of GSE's reported

[*17] expenses.  With respect to 2013 and 2014, the parties agree that GSE was an active trade or business.  However, respondent contends that petitioners failed to substantiate many of GSE's reported expenses.

### 1.    Startup Expenses

We first consider whether GSE's 2010 and 2011 expenditures should be classified as nondeductible startup expenses under section 195.

To qualify for deduction under section 162 or 212, expenses must be associated with a trade or business or other income-producing activity that is functioning as a going concern.  See Woody v. Commissioner, T.C. Memo. 2009-93, aff'd, 403 F. App'x 519 (D.C. Cir. 2010); Glotov v. Commissioner, T.C. Memo. 2007-147; Walsh v. Commissioner, T.C. Memo. 1988-242, aff'd without published opinion, 884 F.2d 1393 (6th Cir. 1989).  Although a taxpayer may be committed to entering into a business and invest considerable time and money in preparing to do so, the activity does not constitute a trade or business for section 162(a) purposes until the business is actually functioning and performing the activities for which it was organized.  Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68 (1965); see also Glotov v. Commissioner, T.C. Memo. 2007-147.  Business operations with respect to the activity must have actually commenced.

**[*18]** See McKelvey v. Commissioner, T.C. Memo. 2002-63, aff'd, 76 F. App'x 806 (9th Cir. 2003). "Until that time, expenses related to that activity are not 'ordinary and necessary' expenses currently deductible under section 162 (nor are they deductible under section 212) but rather are 'start-up' or 'pre-opening' expenses." Woody v. Commissioner, slip op. at 9-10.

Section 195(a) provides the general rule that no current deduction shall be allowed for startup expenditures. Section 195(c)(1) defines a "start-up expenditure" as:

> (1) * * * any amount--
>
> > (A) paid or incurred in connection with--
> >
> > > (i) investigating the creation or acquisition of an active trade or business, or
> > >
> > > (ii) creating an active trade or business, or
> > >
> > > (iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and
> >
> > (B) which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred.

**[*19]** However, under section 195(b)(1)(A), a taxpayer may elect to deduct for the taxable year in which the active trade or business begins up to $5,000 of startup expenditures, reduced by the amount by which those expenditures exceed $50,000. The remainder is allowable as a deduction ratably over the 180-month period beginning with the month in which the active trade or business begins. Sec. 195(b)(1)(B). This election must be made no later than the time prescribed for filing the return for the taxable year in which the trade or business begins. Sec. 195(d)(1). Section 1.195-1(b), Income Tax Regs., provides that a "taxpayer is deemed to have made an election under section 195(b) to amortize start-up expenditures as defined in section 195(c)(1) for the taxable year in which the active trade or business to which the expenditures relate begins."[8] A taxpayer may forgo this deemed election by affirmatively electing to capitalize startup expenditures on a timely filed return for that year. Sec. 1.195-1(b), Income Tax Regs.

---

[8] This regulation applies to startup expenditures paid or incurred after August 16, 2011. Sec. 1.195-1(d), Income Tax Regs. Taxpayers may apply the final regulation to expenses paid or incurred after October 22, 2004, provided the applicable limitations period has not expired for the year the sec. 195 election is deemed made. Sec. 1.195-1(d), Income Tax Regs. A nearly identical temporary regulation applies to expenditures paid or incurred after September 8, 2008. See sec. 1.195-1T(b), (d), Temporary Income Tax Regs., 73 Fed. Reg. 38913 (July 8, 2008).

[*20] Respondent contends that section 195 applies because GSE's only activity during 2010 and 2011 was pursuing target companies it did not actually purchase. Respondent also asserts that GSE did not report income until 2013 when it shifted its business purpose from acquiring target companies to providing support to BJW. Petitioners counter that GSE was operational in 2010 and 2011, performing its trade or business of providing support to BJW.

At trial petitioner husband credibly testified that his GSE-related activities in 2010 involved the pursuit of three target entities. He recalled at trial: "[W]e were meeting with our lawyers. We were meeting with business people. Fully engaged with seeking to acquire established companies to merge the operations." Because GSE's only activity in 2010 was the pursuit of potential targets, petitioners' GSE-related expenditures were paid in connection with "investigating the creation or acquisition of an active trade or business". See sec. 195(c)(1). Accordingly, for 2010 petitioners are not entitled to deductions for their GSE-related expenses. See sec. 195(a).

With respect to 2011, petitioner husband credibly testified that he purchased an interest in a brokerage firm called Bernall & Jones in late December 2010. He also credibly testified that he had always intended for GSE to provide support and services to his other companies. GSE provided business development, marketing,

**[*21]** and other support to the acquired firm after the December 2010 purchase. Because GSE started performing services for which it was intended after December 2010, we find that GSE's active trade or business began in January 2011. See Richmond Television Corp., 345 F.2d at 907. Therefore, section 195(a) does not prohibit petitioners from deducting GSE-related expenditures for 2011.

On their 2011 return petitioners did not make an affirmative election to capitalize their startup expenditures. Accordingly, pursuant to section 1.195-1(b), Income Tax Regs., petitioners are deemed to have made the election to amortize startup expenditures under section 195(b) for 2011.

### 2. 2010 Expenses

Because petitioners are deemed to have made the election to amortize startup expenses under section 195(b), we must determine the amount of petitioners' GSE-related startup expenses for 2010. In the table below, we summarize the expenses reported on petitioners' 2010 Schedule C, the amounts disallowed in the deficiency notice, the amounts respondent concedes on brief, and the amounts still at issue.

[*22]

| Item | Reported | Disallowed | Conceded | At issue |
|------|----------|------------|----------|----------|
| Meals and entertainment | $1,531 | $1,531 | --- | $1,531 |
| Rent/lease | 4,140 | 4,140 | $3,372 | 768 |
| Depreciation | 1,600 | 1,600 | --- | 1,600 |
| Other expenses | 1,707 | 1,707 | 1,707 | --- |
| Car and truck | 3,600 | 3,600 | --- | 3,600 |
| Legal and professional | 12,204 | 12,201 | 12,201 | --- |
| Travel | 14,785 | 14,785 | 14,785 | --- |

i. Meals and Entertainment

The strict substantiation requirements of section 274(d) apply to this expense. Petitioners provided no document that qualifies as an adequate record within the meaning of section 274(d) and no other corroborative evidence sufficient to satisfy the requirements of that section. We therefore hold that petitioners failed to substantiate GSE's reported meal and entertainment expenses.

ii. Rent/Lease

The record does not establish that GSE had rental expenses in excess of the amount respondent has conceded. On the basis of respondent's concession, we hold that petitioners substantiated rent/lease expenses of $3,372.

iii. Depreciation

Petitioner husband credibly testified that GSE's deduction for depreciation comprised amounts paid for office equipment and a 1996 Jetta. The latter is a passenger automobile that falls within the definition of listed property under

[*23] section 280F(d)(4) and (5). Therefore, petitioners' depreciation deduction for this vehicle is subject to the strict substantiation requirements of section 274(d).

Petitioners provided no document that qualifies as an adequate record within the meaning of section 274(d) and no other corroborative evidence sufficient to satisfy the requirements of that section. Furthermore, because we do not know how much of the depreciation deduction is attributable to the automobile, we have no basis to make an estimate with respect to the office equipment.

Consequently, although we found petitioners' testimony credible, we have no choice but to hold that they failed to substantiate GSE's reported depreciation expenses.[9]

### iv.    Car and Truck

For the reasons explained supra part II(A)(2)(iii), we hold that petitioners failed to substantiate GSE's reported car and truck expenses.

---

[9] We decide this issue as framed by the parties. Given our holding, the Court need not decide the interplay (if any) between secs. 167 and 195.

**[*24]**     v.     <u>Conclusion</u>

On the basis of respondent's concessions and our review of the record, we find that petitioners substantiated GSE-related startup expenses of $32,065. Petitioners are entitled to a deduction of $5,000 for 2011 and may amortize the remaining balance of $27,065.  <u>See</u> sec. 195(b)(1).  This balance is deductible ratably over the 180-month period beginning with January 2011, which was the month in which GSE's active trade or business began, absent an earlier complete disposition of GSE's business.  <u>See</u> sec. 195(b)(1) and (2).

3.     <u>2011 Schedule C Deductions</u>

The table below summarizes the expenses reported on petitioners' 2011 Schedule C,[10] the amounts disallowed in the deficiency notice, the amounts respondent concedes on brief, and the amounts still at issue.  Respondent contends petitioners have not substantiated the amounts listed below:

| Item | Reported | Disallowed | Conceded | At issue |
|------|----------|------------|----------|----------|
| Legal and professional | $1,000 | $407 | --- | $407 |
| Travel | 8,489 | 1,054 | --- | 1,054 |

---

[10] Petitioners claimed several other Schedule C deductions that respondent did not adjust in the deficiency notice.  We do not include those items.

**[*25]**                    i.        <u>Legal and Professional Services</u>

At trial petitioner husband credibly testified that GSE hired several attorneys throughout the years at issue. Those attorneys provided legal advice and counsel pertaining to licensing, State insurance requirements, acquisitions, and business planning. Petitioner husband also credibly testified that the amount reported on the Schedule C for 2011 was correct as to the portion of the legal fees that related to GSE's business.

On the basis of petitioner husband's credible testimony, we hold that petitioners are entitled to a Schedule C deduction of $1,000 for legal and professional services.

                    ii.        <u>Travel</u>

The strict substantiation requirements of section 274(d) apply to travel expenses. To substantiate $1,054 of travel expenses disallowed by respondent, petitioners submitted airline itineraries and a construction risk management conference schedule. These documents do not do not state the amounts petitioners expended and therefore fail to satisfy section 274(d). Accordingly, we sustain respondent's determination with respect to this issue.

[*26]    4.    2013 Schedule C2 Deductions

The table below summarizes the expenses reported on petitioners' 2013 Schedule C2, the amounts disallowed in the deficiency notice, the amounts respondent concedes on brief, and the amounts still at issue.  Respondent contends that petitioners have not substantiated the amounts listed below:

| Item | Reported | Disallowed | Conceded | At issue |
|------|----------|------------|----------|----------|
| Other expenses | $4,945 | $4,945 | --- | $4,945 |
| Meals and entertainment | 563 | 563 | --- | 563 |
| Travel | 3,465 | 3,465 | --- | 3,465 |
| Supplies | 390 | 390 | --- | 390 |
| Rent/lease | 533 | 533 | --- | 533 |
| Legal and professional | 850 | 850 | --- | 850 |
| Interest | 4,532 | 4,532 | --- | 4,532 |
| Depreciation | 33,875 | 33,875 | --- | 33,875 |
| Car and truck | 5,506 | 5,506 | --- | 5,506 |

i.    Other Expenses

We have found that in 2013 petitioner husband, on behalf of GSE, paid $4,465 for taxes and licensing fees, postage, bank charges, printing, telephone,

[*27] and internet.[11]  Accordingly, we hold that petitioners are entitled to a deduction of $4,465 for other expenses.

### ii.  Meals and Entertainment

For the reasons explained supra part II(A)(2)(i), petitioners failed to satisfy the substantiation requirements of section 274(d).  Accordingly, they are not entitled to a deduction for meals and entertainment.

### iii.  Travel

To substantiate $3,465 of travel expenses disallowed by respondent, petitioners submitted airline itineraries.  These documents do not substantiate the amounts or business purposes of the reported expenses.  Because petitioners have failed to satisfy the substantiation requirements of section 274(d), we sustain respondent's disallowance of this deduction.

### iv.  Supplies

Petitioner husband credibly testified that this deduction comprised expenses for office and computer supplies.  We find petitioner husband's testimony to be credible evidence that petitioners paid $390 for GSE-related office and computer

---

[11]  The difference between the amount reported and the amount we allow is $480.  This amount pertains to a charitable donation that petitioners failed to substantiate.  See sec. 170(f)(8)(A) (requiring the donor to obtain a contemporaneous written acknowledgment of the donation from the donee for contributions of cash or property over $250).

[*28] supplies. Accordingly, we hold that petitioners are entitled to a deduction of $390 for supplies.

### v. Rent/Lease

Petitioner husband testified that this reported expense was for "miscellaneous equipment". However, he did not specify how this expense pertained to GSE's trade or business. We therefore sustain respondent's disallowance of this deduction.

### vi. Legal and Professional

For the reasons explained supra part II(A)(3)(i), we hold that petitioners are entitled to a deduction of $850 for legal and professional services.

### vii. Interest

Petitioner husband testified that the reported interest expense was erroneous and should have been reported on their Schedule C1 for BJW. However, on their Schedule C1 for BJW, petitioners claimed an interest deduction of $3,109, which respondent concedes on brief. Petitioners did not present any testimony or other evidence to substantiate additional interest expenses. We therefore sustain respondent's disallowance of this deduction.

**[\*29]**        viii.   <u>Depreciation</u>

At trial petitioner husband explained that the placement of this deduction on the Schedule C2 for GSE was in error because the deduction pertains to BJW. According to petitioners, the reported depreciation expense represents the amortization of goodwill from the purchase of Bernall & Jones for $320,000 at the end of December 2010.

Section 167(a) provides for depreciation of property used in a trade or business or held for the production of income.  Under section 1.167(a)-3(a), Income Tax Regs., "[n]o deduction for depreciation is allowable with respect to goodwill."  However, section 197 provides for the amortization of the acquisition cost of certain intangibles, including goodwill, over a fixed 15-year period.  Sec. 197(a), (d)(1)(A).  An amortizable section 197 intangible includes any section 197 intangible acquired by a taxpayer after August 10, 1993, and held in connection with the conduct of a trade or business.  Sec. 197(c)(1).  For purposes of depreciation and amortization, a taxpayer's basis in purchased property is the cost, including any valid liabilities incurred in acquiring the property.  <u>Crane v. Commissioner</u>, 331 U.S. 1, 9-11 (1947).

Respondent's sole argument with respect to this deduction is that petitioners failed to substantiate the purchase price and the amount allocable to goodwill.

[*30] However, petitioner husband credibly testified that the purchase price was $320,000. He also credibly testified that Bernall & Jones (which was renamed BJW) did not have any tangible assets of value when he purchased it. Instead the insurance firm had an established staff with extensive knowledge of the customer base, the accounts, and other aspects of the business.

On the basis of petitioner husband's credible testimony, we find that the $320,000 purchase price was wholly allocable to the insurance firm's workforce in place, information base, and goodwill, all of which are amortizable section 197 intangibles.[12] See sec. 197(c) and (d). However, the amortization deduction that petitioners claimed is miscalculated. We find that the proper amortization deduction is $21,333 (petitioner husband's cost basis of $320,000, divided by 15). Accordingly, petitioners are entitled to an amortization deduction of $21,333 for 2013.[13]

---

[12] Sec. 197 intangibles do not include an interest in a partnership. Sec. 1.197-2(c)(1), Income Tax Regs. Thus, amortization under sec. 197 is generally not available for the cost of acquiring a partnership interest. Id. Respondent did not contend in the deficiency notice or at any point in this proceeding that petitioner husband purchased a nonamortizable partnership interest in Bernall & Jones. We deem the argument waived.

[13] Respondent does not dispute petitioners' contention that this deduction, if allowed, belongs on the Schedule C1 for BJW rather than the Schedule C2 for GSE. We expect the parties to treat the deduction as BJW's in the Rule 155

(continued...)

**[*31]**          ix.     Car and Truck

For the reasons explained supra part II(A)(2)(iii), we hold that petitioners

failed to substantiate GSE's reported car and truck expenses.  We therefore sustain

respondent's disallowance of this deduction.

5.     2014 Schedule C2 Deductions

The table below summarizes the expenses reported on petitioners' 2014

Schedule C2, the amounts disallowed in the deficiency notice, the amounts

respondent concedes on brief, and the amounts still at issue.  Respondent contends

that petitioners have not substantiated the amounts listed below:

| Item | Reported | Disallowed | Conceded | At issue |
|---|---|---|---|---|
| Meals and entertainment | $346 | $346 | --- | $346 |
| Travel | 401 | 401 | --- | 401 |
| Office expenses | 677 | 677 | --- | 677 |
| Advertising | 289 | 289 | --- | 289 |

          i.     Meals and Entertainment

For the reasons explained supra part II(A)(2)(i), petitioners failed to satisfy

the substantiation requirements of section 274(d).  Accordingly, they are not

entitled to a deduction for meals and entertainment.

---

[13](...continued)
computation to the extent this correction has any effect thereon.

**[\*32]**    ii. <u>Travel</u>

Petitioners rely on petitioner husband's testimony to substantiate travel expenses of $401. Having failed to submit adequate records or other sufficient evidence corroborating the amount, time, and business purpose of petitioner husband's reported travel expenses, petitioners have not satisfied the requirements of section 274(d). We sustain respondent's disallowance of this deduction.

    iii. <u>Office Expenses</u>

We have found that petitioner husband, on behalf of GSE, paid $677 in 2014 to lease part-time office space at the Oakland location. We hold that petitioners are entitled to a deduction of $677 for office expenses.

    iv. <u>Advertising</u>

We have found that petitioner husband paid $289 for GSE-related online marketing efforts in 2014. We hold that petitioners are entitled to a deduction of $289 for advertising.

 B. <u>BJW</u>

For 2013 and 2014 petitioners reported BJW's income and expenses on Schedules C1. Respondent disallowed petitioners' Schedule C1 deductions for both years.

**[*33]**      1.     2013

The table below summarizes the expenses reported on petitioners' 2013 Schedule C1, the amounts disallowed in the deficiency notice, the amounts respondent concedes on brief, and the amounts still at issue. Respondent contends that petitioners failed to substantiate the expenses listed below that have not been conceded:

| Item | Reported | Disallowed | Conceded | At issue |
|---|---|---|---|---|
| Other expenses | $7,020 | $7,020 | $6,850 | $170 |
| Wages | 55,984 | 55,984 | 55,984 | --- |
| Meals and entertainment | 270 | 270 | --- | 270 |
| Travel | 1,410 | 1,410 | --- | 1,410 |
| Taxes and licenses | 12,723 | 12,723 | 11,458 | 1,265 |
| Rent/lease | 20,097 | 20,097 | 20,097 | --- |
| Legal and professional | 2,234 | 2,234 | 2,234 | --- |
| Interest | 3,109 | 3,109 | 3,109 | --- |
| Insurance | 10,634 | 10,634 | 10,634 | --- |
| Commissions and fees | 112,432 | 112,432 | 112,432 | --- |

      i.     Other Expenses

On brief respondent concedes that petitioners have substantiated all but $170 of this reported expense. After careful review of the record, we find that petitioners substantiated the remaining $170 of other expenses. We therefore hold that petitioners are entitled to a deduction of $7,020.

**[*34]**              ii.      <u>Meals and Entertainment</u>

For the reasons explained <u>supra</u> part II(A)(2)(i), petitioners failed to satisfy the substantiation requirements of section 274(d). Accordingly, they are not entitled to a deduction for meals and entertainment.

              iii.     <u>Travel</u>

To substantiate petitioner husband's BJW-related travel expenses, petitioners rely on petitioner husband's testimony, along with canceled checks, a summary travel log, and an Expedia itinerary. Because none of these documents establishes the business purposes of the reported expenditures, petitioners have failed to satisfy the substantiation requirements of section 274(d). Accordingly, we sustain respondent's disallowance of this deduction.

              iv.      <u>Taxes and Licenses</u>

Petitioners reported tax and licensing expenses of $12,723. On brief respondent concedes that petitioners have substantiated all but $1,265 of these expenses. The $12,723 deduction comprised expenses for individual sales licenses, California and other local taxes, and entity licensing fees. As we have found that petitioner husband paid the remaining $1,265 on behalf of BJW, we hold that petitioners are entitled to a deduction of $12,723 for tax and licensing expenses.

[*35]      2.    2014

The table below summarizes the expenses reported on petitioners' 2014 Schedule C1, the amounts disallowed in the deficiency notice, the amounts respondent concedes on brief, and the amounts still at issue.  Respondent contends that petitioners failed to substantiate the expenses listed below that have not been conceded:

| Item | Reported | Disallowed | Conceded | At issue |
|------|---------:|-----------:|---------:|---------:|
| Wages | $68,686 | $68,686 | $65,208 | $3,478 |
| Meals and entertainment | 2,489 | 2,489 | --- | 2,489 |
| Travel | 2,456 | 2,456 | --- | 2,456 |
| Taxes and licenses | 15,317 | 15,317 | 15,317 | --- |
| Rent/lease | 21,135 | 21,135 | 21,135 | --- |
| Legal and professional | 2,979 | 2,979 | 2,700 | 279 |
| Interest | 28,181 | 28,181 | 5,965 | 22,216 |
| Insurance | 17,070 | 17,070 | 12,351 | 4,719 |
| Commissions and fees | 125,952 | 125,952 | 125,952 | --- |
| Utilities | 5,239 | 5,239 | 5,239 | --- |
| Office expenses | 3,060 | 3,060 | 3,060 | --- |
| Depreciation/sec. 179 expense | 36,179 | 36,179 | --- | 36,179 |
| Car and truck expenses | 756 | 756 | --- | 756 |
| Advertising | 435 | 435 | 435 | --- |
| Repairs and maintenance | 71 | 71 | 71 | --- |

           i.    Wages

On brief respondent concedes that petitioners have substantiated BJW-related wages of $65,208, leaving the remaining $3,478 at issue.  The record establishes (and we have found) that petitioner husband paid wages of $58,000

[*36] and $7,209 to Kendra Thompson and Michael Johnson, respectively. The record does not establish that BJW paid wages in excess of the sum of those amounts, $65,209. Accordingly, petitioners are entitled to a deduction of $65,209.

### ii. Meals and Entertainment

For the reasons explained supra part II(A)(2)(i), petitioners failed to satisfy the substantiation requirements of section 274(d). Accordingly, they are not entitled to a deduction for meals and entertainment.

### iii. Travel

To substantiate petitioners' BJW-related travel expenses, petitioners rely on petitioner husband's testimony and a Southwest airlines travel itinerary. The travel itinerary does not establish the business purpose of the reported expenses. Accordingly, petitioners have failed to satisfy the substantiation requirements of section 274(d), and they are not entitled to a deduction for travel.

### iv. Legal and Professional

Petitioners reported legal and professional expenses of $2,979. On brief respondent concedes that petitioners have substantiated all but $279 of these expenses. At trial petitioner husband credibly testified that BJW had legal and professional expenses in the amount stated on the return, and we have found that petitioner husband paid $2,979 during 2014 for BJW's legal and professional

[*37] expenses. We therefore hold that petitioners are entitled to a deduction of $2,979 for legal and professional expenses.

### v.    Interest

Petitioners claimed a $28,181 interest expense deduction on their Schedule C1. On brief respondent concedes $5,965 of this amount but contends that petitioners failed to substantiate the remaining $22,216.

A taxpayer may deduct interest paid or incurred during the taxable year if the interest is an ordinary and necessary expense of carrying on a trade or business. Sec. 162(a); Robinson v. Commissioner, 119 T.C. 44, 48 (2002); see sec. 163(a) (allowing a deduction for "all interest paid or accrued within the taxable year on indebtedness", with certain exceptions).

We have found that petitioner husband paid BJW-related interest of $28,181 during 2014. Accordingly, petitioners are entitled to a deduction of $28,181 for interest.

### vi.    Insurance

Petitioners claimed a $17,070 insurance expense deduction on their 2014 Schedule C1. On brief respondent concedes $12,351 of that amount but contends that petitioners failed to substantiate the remaining $4,719.

[*38] The record does not establish that BJW had insurance expenses in excess of the amount respondent has conceded. On the basis of respondent's concession and our review of the record, we hold that petitioners are entitled to a deduction of $12,351 for insurance.

### vii. Depreciation

For the reasons explained supra part II(A)(4)(viii), petitioners are entitled to an amortization deduction of $21,333 for 2014.

### viii. Car and Truck

For the reasons explained supra part II(A)(2)(iii), we hold that petitioners failed to substantiate BJW's reported car and truck expenses. We therefore sustain respondent's disallowance of this deduction.

## III. Additional Tax on Early Distribution

Petitioners concede in their opening brief that they received from their retirement accounts taxable income of $71,625 and $42,858 in 2010 and 2011, respectively. However, they contend that they are not subject to the additional tax on early distributions from qualified plans under section 72(t). Respondent argues that portions of petitioners' early withdrawals are subject to the additional tax.

Where, as here, a taxpayer receives a distribution from a qualified retirement plan, section 72(t)(1) generally provides that his tax shall be increased

**[\*39]** "by an amount equal to 10 percent of the portion of such amount which is includible in gross income." Section 72(t)(2)(A) provides several exceptions to this rule, e.g., where the taxpayer receiving the distribution has attained the age of 59-1/2 or is disabled. See sec. 72(t)(2)(A)(i), (iii). A further exception appears in section 72(t)(2)(E), captioned "Distributions from individual retirement plans for higher education expenses." It provides, with exceptions not relevant here, that an early distribution from an individual retirement plan is not subject to the 10% additional tax to the extent it does not exceed "the qualified higher education expenses * * * of the taxpayer for the taxable year."[14]

Petitioners do not dispute that they were under the age of 59-1/2 when they received the distributions at issue or that they were not disabled at those times. Petitioners are thus liable for the 10% additional tax unless another exception in section 72(t) applies. The only exception they have raised is the exception for "higher education expenses."

Petitioners received early distributions from their retirement accounts totaling $71,625 in 2010 and $42,858 in 2011. Petitioners submitted evidence of

---

[14] The term "qualified higher education expenses" means qualified higher education expenses (as defined in sec. 529(e)(3)) for education furnished to the taxpayer, the taxpayer's spouse, or any child (as defined in sec. 152(f)(1)) or grandchild of the taxpayer or the taxpayer's spouse, at an eligible educational institution (as defined in sec. 529(e)(5)). Sec. 72(t)(7)(A).

[*40] tuition payments of $30,557 for 2010, and respondent has conceded that this amount is not subject to the additional tax. The record contains no evidence of additional qualified education expenses paid for 2010 or any qualified education expenses paid for 2011.[15]

Accordingly, we find petitioners liable for the 10% additional tax under section 72(t) on $41,068[16] of their early retirement distribution for 2010. We also sustain respondent's determination of additional tax under section 72(t) for 2011.

We have considered all other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.

---

[15] We note that respondent determined a sec. 72(t) additional tax of $1,702 for 2011 after subtracting amounts used for higher education expenses in the notice of deficiency.

[16] Total distributions of $71,625 minus education expenses of $30,557.